**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CLARE SCHUMACHER | : | |
| 1439 Aspen Court | : | |
| West Chester, PA 19380 | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | No.: _____ |
| | : | |
| v. | : | |
| | : | |
| 470 MANOR OPERATING, LLC d/b/a | : | |
| ST. MARTHA'S CENTER FOR | : | |
| REHABILITATION & HEALTHCARE | : | |
| 470 Manor Avenue | : | JURY TRIAL DEMANDED |
| Downingtown, PA 19335 | : | |
| | : | |
| Defendant. | : | |

---

## CIVIL ACTION COMPLAINT

Clare Schumacher (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1.       Plaintiff has initiated this action to redress violations by 470 Manor Operating, LLC d/b/a St. Martha's Center for Rehabilitation & Healthcare (*hereinafter* "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 200(d) *et. seq*), the Older Adults Protective Services Act ("OAPSA" - 35 P.S. §§ 10225.101 *et seq.*), and the Pennsylvania Human Relations Act ("PHRA").[1]   As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claims under the PHRA are referenced herein for notice purposes.  She is required to wait 1 full year before initiating a lawsuit from date of dual-filing with the EEOC.  Plaintiff must however file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue-letter under Title VII.  Plaintiff's PHRA claims however will mirror identically her federal claims under Title VII.

## JURISDICTION AND VENUE

2.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.  There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims asserted herein.

3.      This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant is deemed to reside where it is subjected to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

5.      Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and also dual-filed said charge with the Pennsylvania Human Relations Commission ("PHRC").  Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge with the EEOC and PHRC, and by filing the instant lawsuit within 90 days of receiving her right-to-sue letter from the EEOC.

## PARTIES

6.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.      Plaintiff is an adult individual with an address set forth in the caption.

8.      470 Manor Operating, LLC d/b/a St. Martha's Center for Rehabilitation and Healthcare is a Catholic faith care center that provides short- and long-term rehabilitation and care programs to its residents, with an address set forth in the above-caption.  Plaintiff was hired from and worked out of this address.

9.      At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the Defendant.

## FACTUAL BACKGROUND

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff is an adult female.

12.     Plaintiff was employed by Defendant as a Registered Nurse ("RN") Unit Manager for approximately 9 months, from on or about January 14, 2020, until her unlawful termination (discussed further *infra*) on or about October 22, 2020.

13.     Plaintiff worked well over 40 hours per week for Defendant, and reported primarily to RN Director of Nursing ("DON"), Karen Cassidy (*hereinafter* "Cassidy").  Plaintiff had also indirectly reported to Executive Director, Jen Quinones (*hereinafter* "Quinones") and Regional Management, Ed (last name unknown, *hereinafter* "Ed").

14.     Throughout her employment with Defendant, Plaintiff was a hard-working employee who performed her job well.

15.     Upon Plaintiff's observations and belief, Defendant is run very haphazardly, with poor management and organization, and in continual violation of policies and regulatory obligations.

16.     For example, during her tenure with Defendant, Plaintiff was repeatedly and routinely subjected to unwelcomed sexual comments/conduct by a housekeeping employee, Raymond Williams (*hereinafter* "Williams").  By way of specific example, but not intended to be an exhaustive list, Williams:

a.  Followed Plaintiff around despite not needing to be in the same areas that Plaintiff was working;

b.  Stood too close to Plaintiff and touched her shoulder on multiple occasions;

c.  Obsessively watched Plaintiff's movements, regularly waiting for her wherever she was working;

d.  Routinely asked other employees about Plaintiff's whereabouts;

e.  Subjected Plaintiff to verbally sexual and inappropriate comments, such as telling Plaintiff he wanted "to run away with [her]" and "be with [her]"; and

f.  Regularly blocked the one entrance/exit that Plaintiff utilized to leave the facility with his mop, laughing at her and not allowing her to leave for brief periods. Plaintiff discovered that she was not the only female employee that Williams subjected to this harassing behavior (i.e., when she commented at a weekly Care Conference that she was sick of Williams constantly blocking her when she leaves the facility, virtually every other woman in the meeting replied "me too.")

17.     Throughout her tenure with Defendant, Plaintiff tried her best to either ignore Williams' aforementioned unwanted harassment or indicate through her actions and body language that she was uncomfortable with Williams' sexual advances/comments/touching.  However, the sexual harassment became so pervasive that Plaintiff had to cease working for the remainder of one day.

18.     Because Williams' aforesaid sexual harassment began to interfere with Plaintiff's work, she was forced to complain to multiple levels of Defendant's management of said sexual harassment and seek significant intervention in advance of her termination.

19.     Plaintiff initially expressed her sexual harassment concerns to Defendant's management in the July 2020 timeframe.  However, by early August of 2020, Plaintiff had no choice but to escalate her complaints because she had been scheduled to work in the presence of Williams in a different area of the building.  As a result, Plaintiff requested that Williams work away from her and refrain from speaking to her.

20.     Instead of meaningfully investigating or addressing Plaintiff's aforesaid complaints of sexual harassment, Plaintiff was subjected to pretextual admonishment and written discipline in or about by October of 2020.

21.     Thereafter, Plaintiff was abruptly terminated on or about October 22, 2020, for alleged "poor performance."

22.     Defendant's purported reason for her termination – "poor performance" – however, is completely pretextual and clearly motivated by Plaintiff's objections to sexual harassment and continued requests to resolve sexual harassment.

23.     Additionally, even though Defendant's management knew Williams had sexually harassed Plaintiff (which upon information and belief is a terminable offense as Defendant had a zero-tolerance policy for sexual harassment), they did not take any meaningful remedial action to correct his behavior, and he remained employed with Defendant following Plaintiff's termination.

24.     Plaintiff believes and therefore avers that she was really subjected to a hostile work environment and terminated because of her gender and/or complaints of sexual harassment/hostile work environment (as discussed *supra*).

-**Violations of the Older Adult Protective Services Act-**

25.     In addition to reports of sexual harassment, leading up to her termination, Plaintiff reported multiple instances of neglect and/or abuse to Defendant's management, pertaining to several patients, who, upon information and belief, were 60 years of age or older.  By way of example, but not intended to be an exhaustive list:

  a.  Plaintiff discovered after returning to work one Monday, that an elderly patient (*hereinafter* referred to as "Patient A") [2] had fallen on multiple occasions over the weekend, followed by her fourth fall that Monday, during which Patient A hit her head.  Plaintiff reported the neglect and/or abuse of Patient A to DON Cassidy, inquiring as to why Patient A had not been sent to the hospital over the weekend, as the patient was on blood thinners and at risk of severe harm from the falls. Cassidy hostilely advised Plaintiff that "no one would be sending [Patient A] out," to which Plaintiff replied that they had an obligation to send Patient A for an evaluation.  Plaintiff then contacted Patient A's doctor who had her transported to Brandywine Hospital, after which she was evaluated and airlifted to a trauma center in Reading Pennsylvania for a brain bleed.  Instead of commending Plaintiff for protecting the well-being of Patient A, Cassidy admonished and reported Plaintiff to Quinones for harming Defendant's reputation;

  b.  On a separate occasion, Plaintiff went to assess another elderly patient (*hereinafter* referred to as "Patient B"), who screamed painfully when Plaintiff touched her hand.  Plaintiff requested an x-ray of Patient B's hand, which revealed a very bad fracture.  Following the x-ray, Plaintiff discovered that Patient B's hand injury had

---

[2] Patients herein are referenced only as Patients A, B, and C for privacy purposes.

been brought to the attention of several people, including Cassidy, who had ignored Patient B's complaints.  When Plaintiff reported to Cassidy that ignoring Patient B's fractured hand amounted to neglect, Cassidy refused to believe that Patient B's hand was actually fractured and required a second x-ray.  Following the second x-ray, Plaintiff complained to Defendant's Medical Director, who confirmed to Plaintiff that Patient B's fracture was of the kind that could have resulted in amputation if left untreated; and

c. Plaintiff discovered that Defendant's management, including but not limited to Cassidy, failed to assess another elderly patient (*hereinafter* referred to as "Patient C"), despite multiple requests from Patient C's social worker.  As a result, when Patient C was eventually assessed, she was near death, immediately transferred to a local hospital, and spent over 5 weeks in recovery;

26.     Plaintiff reported each of the aforementioned (and other) instances of patient neglect and/or abuse to multiple levels of management, including but not limited to Cassidy and Quinones, always following the proper chain of command.

27.     Before Plaintiff had the opportunity to see whether Defendant's administration was going to report such aforementioned neglect and/or abuse to the proper agency or whether an investigation into such acts of neglect and/or abuse would be properly conducted by Defendant's administration, Plaintiff was abruptly terminated on or about October 22, 2020, for alleged "poor performance."

28.     Defendant's purported reason for her termination – "poor performance" – however, is completely pretextual and clearly motivated by Plaintiff's non-cooperation or objection to patient abuse and neglect (inclusive of sending patients to hospitals where medically necessary).

7

29.    Plaintiff believes and therefore avers that she was really terminated (1) in retaliation for reporting the aforementioned acts of neglect and/or abuse and (2) so that Defendant could intimidate her from further reporting the aforementioned acts of neglect and/or abuse to an appropriate outside agency.

**COUNT I**
**Violations of Title VII**
**([1] Gender Discrimination; [2] Sexual Harassment/Hostile Work Environment; and [3] Retaliation)**

30.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

31.    During her tenure with Defendant, Plaintiff was subjected to severe and/or pervasive sexual advances, comments, and conduct by a male co-worker such that she was subjected to a hostile work environment.

32.    The male co-worker's harassment of Plaintiff interfered with Plaintiff's work and as a result she was forced to complain of said sexual harassment to Defendant's management, in advance of her termination.

33.    In response to Plaintiff's complaints of sexual harassment, Williams continued to subject Plaintiff to unwelcomed sexual comments/conduct, and Defendant's management subjected Plaintiff to pretextual admonishment and written discipline.

34.    On or about October 22, 2020, Plaintiff was abruptly terminated in close proximity to her complaints of sexual harassment, for pretextual reasons.

35.    Plaintiff believes and therefore avers that she was subjected to a hostile work environment and terminated because of her gender and/or in retaliation for her complaints of sexual harassment (as discussed *supra*).

36.    These actions as aforesaid constitute unlawful violations under Title VII.

**COUNT II**
**Violations of the Older Adults Protective Services Act**
**(35 P.S. §§ 10225.101 *et seq.*)**
**(Retaliatory Action / Intimidation)**

37.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

38.     Plaintiff was an employee of Defendant, a "facility" or facilities under the Older Adult Protective Services Act 35 P.S. § 10225.103, as this term has been defined.

39.     35 P.S. § 10225.302 states that "[a]ny person having reasonable cause to believe that an older adult is in need of protective services may report such information to the agency which is the local provider of protective services. . ."

40.     Leading up to her termination, Plaintiff reported multiple instances of neglect and/or abuse to her supervisor (Cassidy), pertaining to several older patients, who, upon information and belief, were 60 years of age or older, with functional limitations and therefore needed the assistance of another person to perform or obtain services necessary to maintain their physical or mental health.

41.     Before Plaintiff had the opportunity to see whether Defendant's administration was going to report such aforementioned neglect and/or abuse to the proper agency or whether an investigation into such acts of neglect and/or abuse would be properly conducted by Defendant's administration, Plaintiff was abruptly terminated.

42.     Plaintiff, unlike her fellow employees who failed to report neglect and/or abuse within Defendant and/or who actually committed neglect and/or abuse, was terminated from her employment with Defendant for completely pretextual reasons.

9

43.     Plaintiff was subjected to verbal admonishment, discipline, and termination by Defendant as a way to intimidate her from further reporting such acts of abuse to an appropriate outside agency.

44.     35 P.S. § 10225.302(c) clearly states that "[a]ny person making a report or cooperating with the agency . . . shall be free from any discriminatory, retaliatory or disciplinary action by an employer or by any other person or entity . . . [and] [a]ny person who violates this subsection is subject to a civil lawsuit by the reporter wherein the reporter . . . shall recover treble compensatory damages, compensatory and punitive damages . . . ."

45.     35 P.S. §§ 10225.302(c.1) (a subsection of 35 P.S. § 10225.302(c)) further states that "[a]ny person . . . with knowledge sufficient to justify making a report or cooperating with the agency . . . shall be free from any intimidation by an employer or by any other person or entity. Any person who violates this subsection is subject to civil lawsuit by the person intimidated . . . wherein the person intimidated . . . shall recover treble compensatory and punitive damages . . . ."

46.     Defendants violated 35 P.S. §§ 10225.302(c.1) because they intentionally retaliated against Plaintiff by hostilely admonishing, disciplining, and ultimately terminating Plaintiff as a way to intimidate her because she had knowledge that Defendant's employees engaged in neglect and/or abuse against patients of Defendant (which would have been sufficient to justify her making a report to an appropriate outside agency on aging).

47.     As a consequence of Defendant's violations of the Older Adult Protective Services Act, Plaintiff has suffered damages.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B.      Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C.      Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.      Plaintiff demands trial by jury on all issues so triable consistent with Fed. R. Civ. P. 38(a)(1).


Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esq.
3331 Street Rd.
Two Greenwood Square, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated:  May 27, 2021

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## CASE MANAGEMENT TRACK DESIGNATION FORM

Clare Schumacher

CIVIL ACTION

v.

470 Manor Operating, LLC d/b/a St. Martha's Center for
Rehabilitation & Healthcare

NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for
plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of
filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse
side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said
designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on
the plaintiff and all other parties, a Case Management Track Designation Form specifying the track
to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.               ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (X )

| 5/27/2021 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| (215) 639-0801 | (215) 639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM
*(to be used by counsel or pro se plaintiff  to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff:  1439 Aspen Court, West Chester, PA 19380

Address of Defendant:  470 Manor Avenue, Downingtown, PA 19335

Place of Accident, Incident or Transaction:  Defendant's place of business

---

*RELATED CASE, IF ANY:*

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when  *Yes*  is answered to any of the following questions:

1.  Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes [ ]    No [X]

2.  Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously  terminated action in this court?    Yes [ ]    No [X]

3.  Does this case involve the validity or infringement of a patent  already in suit or any earlier numbered case pending or within one year previously  terminated action of this court?    Yes [ ]    No [X]

4.  Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes [ ]    No [X]

I certify that, to my knowledge, the within case [ ] *is* / [X] *is not*  related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:  5/27/2021          _____          ARK2484 / 91538
                          *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

*A.*   *Federal Question Cases:*

[ ]   1.   Indemnity Contract, Marine Contract, and All Other Contracts
[ ]   2.   FELA
[ ]   3.   Jones Act-Personal Injury
[ ]   4.   Antitrust
[ ]   5.   Patent
[ ]   6.   Labor-Management Relations
[X]   7.   Civil Rights
[ ]   8.   Habeas Corpus
[ ]   9.   Securities Act(s) Cases
[ ]   10.  Social Security Review Cases
[ ]   11.  All other Federal Question Cases
          *(Please specify):* _____

*B.*   *Diversity Jurisdiction Cases:*

[ ]   1.   Insurance Contract and Other Contracts
[ ]   2.   Airplane Personal Injury
[ ]   3.   Assault, Defamation
[ ]   4.   Marine Personal Injury
[ ]   5.   Motor Vehicle Personal Injury
[ ]   6.   Other Personal Injury *(Please specify):* _____
[ ]   7.   Products Liability
[ ]   8.   Products Liability – Asbestos
[ ]   9.   All other Diversity Cases
          *(Please specify):* _____

---

### ARBITRATION CERTIFICATION
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I,  Ari R. Karpf          , counsel of record *or* pro se plaintiff, do hereby certify:

[X]   Pursuant to Local Civil Rule 53.2, § 3(c ) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

[ ]   Relief other than monetary damages is sought.

DATE:  5/27/2021          _____          ARK2484 / 91538
                          *Attorney-at-Law / Pro Se Plaintiff*          *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SCHUMACHER, CLARE

**(b)** County of Residence of First Listed Plaintiff        Chester
                    *(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Karpf, Karpf & Cerutti, P.C.; 3331 Street Road, Two Greenwood Square, Suite 128, Bensalem, PA 19020; (215) 639-0801; akarpf@karpf-law.com

## DEFENDANTS

470 MANOR OPERATING, LLC D/B/A ST. MARTHA'S CENTER FOR REHABILITATION & HEALTHCARE

County of Residence of First Listed Defendant        Chester
                    *(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                                  *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| (Excludes Veterans) | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII (42USC2000)

Brief description of cause:
Violations of Title VII, OAPSA and the PHRA.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*     JUDGE _____     DOCKET NUMBER _____

DATE        5/27/2021

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____     AMOUNT _____     APPLYING IFP _____     JUDGE _____     MAG. JUDGE _____

| Print | Save As... | Reset |